UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

| | | |
|---|---|---|
| WILLIAM BRYAN POLSTON, | ) | |
| # 794019, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 1:14-cv-289 |
| | ) | |
| v. | ) | Honorable Paul L. Maloney |
| | ) | |
| CATHLEEN STODDARD, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

## MEMORANDUM OPINION

This is a habeas corpus proceeding brought by a state prisoner pursuant to 28
U.S.C. § 2254.  Petitioner is challenging his Eaton County Circuit Court convictions on
three counts of first-degree criminal sexual conduct (CSC I), Mich. Comp. Laws
§ 750.520b(1)(b) (victim more than 13 but less than 16 years of age, and actor is a
teacher of the school in which the victim is enrolled), and three counts of third-degree
criminal sexual conduct (CSC III),  Mich. Comp. Laws § 750.520d(1)(e) (victim at least
16 but less than 18 years of age, and actor is a teacher of the school in which the victim
is enrolled).  The Michigan Court of Appeals summarized the facts giving rise to
petitioner's convictions as follows:

> Defendant's convictions stem from his relationship with E.P., who had
> been a student in his high school world history class.  In the fall of 2002,
> E.P., a high school freshman, was struggling academically, and defendant
> began tutoring her in world history. E.P. and defendant became friendly.
> On January 20, 2003, defendant picked E.P. up from her parents' house

and took her to his home in Eaton County. There, E.P. and defendant engaged in fellatio, cunnilingus, and vaginal intercourse. At the time, E.P. was 14 years old.

After the incident, E.P. continued to talk to defendant regularly, and the two often engaged in kissing and touching in defendant's classroom. E.P. again went to defendant's house on June 11, 2004, where they engaged in fellatio and vaginal intercourse. E.P. went to defendant's house for the last time on September 17, 2004, after a high school football game. There, defendant gave E.P. alcohol and the two engaged in fellatio and vaginal intercourse. E.P. was 16 years old at the time of both the last two sexual encounters.

E.P. did not tell anyone of her involvement with defendant until several years later, when she told both a former teacher and a coworker. The coworker eventually accompanied E.P. to visit an attorney, and E.P. chose to pursue an out-of-court settlement rather than going to the police. Eventually, E.P. reached a $70,000 settlement agreement with defendant, and received an initial payment of $10,000. Eventually, the teacher E.P. had confided in informed school administrators about the relationship, and E.P. was interviewed about it in the ensuing criminal investigation.

(Op. at 1-2, ECF No. 18-17, PageID.1672-73; *see also People v. Polston*, No. 303302, 2012 WL 3046237, at *1 (Mich. Ct. App. July 26, 2012)).

On January 13, 2011, the jury found petitioner guilty of committing the aforementioned crimes. On February 24, 2011, Judge Calvin Osterhaven sentenced petitioner to fifteen to thirty years' imprisonment on his CSC I convictions and 57 to 180 months' imprisonment on his CSC III convictions. After unsuccessful attempts to overturn his convictions in Michigan's courts, petitioner filed his federal habeas corpus petition.

Petitioner seeks federal habeas corpus relief on the following grounds:

I.     Newly discovered evidence demonstrates that petitioner could not have committed the alleged offenses.  The trial court did not grant him an evidentiary hearing on this evidence.

II.    Petitioner was denied his right to a fair trial because the judge denied his motion for additional time to prepare a defense.  The events [that he] was charged with occurred 7 to 8 years prior to trial, and crucial facts that would prove [his] innocence were not discovered until after sentencing.

III.   Petitioner was denied his right to a fair trial because the court should not have admitted evidence of other pending charges.

IV.    Petitioner was denied a fair trial by the dismissal of a juror.

(Amended Petition at 4-6, ECF No. 7, PageID.31-33).

On December 29, 2014, respondent filed her answer to petitioner's amended petition.  She argues that all grounds in the petition lack merit.  Grounds I, III, and IV were rejected by the Michigan Court of Appeals and petitioner has not carried his burden under 28 U.S.C. § 2254(d).  Ground II is unexhausted and meritless. (Respondent's Answer, ECF No. 17, PageID.49-104).

After review of the state-court record, the Court finds petitioner has not established grounds for federal habeas corpus relief.  The petition will be denied.

## Standard of Review

Because petitioner filed his habeas application long after the April 1996 enactment of the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA), the provisions of that law govern the scope of the Court's review.  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001).  AEDPA has "drastically changed" the nature of habeas review.  *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir.

-3-

2001). AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands the state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citations omitted); *see Hardy v. Cross*, 132 S. Ct. 490, 491 (2011) (*per curiam*); *Felkner v. Jackson*, 562 U.S. 594, 597 (2011) (*per curiam*); *Renrico v. Lett*, 559 U.S. 766, 773 (2010). "AEDPA requires heightened respect for state court factual and legal determinations." *Lundgren v. Mitchell*, 440 F.3d 754, 762 (6th Cir. 2006). Section 2254(e)(1) states: "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." "State-court factual findings [] are presumed correct; the petitioner has the burden of rebutting the presumption by clear and convincing evidence." *Davis v. Ayala*, 135 S. Ct. 2187, 2199-2200 (2015) (citations and internal quotations omitted).

If a state court adjudicated the claim, deferential AEDPA standards must be applied. 28 U.S.C. § 2254(d); *see Premo v. Moore*, 562 U.S. 115, 121 (2011); *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009); *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) (("[A]ny claim that was adjudicated on the merits in State court proceedings' is subject to AEDPA deference.") (quoting 28 U.S.C. § 2254(d)). AEDPA prevents federal habeas "retrials" and ensures that state court convictions are given effect to the extent possible under law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). It prohibits "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Parker v. Matthews*, 132 S. Ct. 2148, 2149 (2012) (*per curiam*).

The AEDPA standard is difficult to meet "because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011); *see Burt v. Titlow*, 134 S. Ct. 10, 16 (2013); *Metrish v. Lancaster*, 133 S. Ct. 1781, 1786-87 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). "Section 2254(d) reflects the that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error corrections through appeal." *Harrington*, 562 U.S. at 102-03 (citation and internal quotation omitted); *see Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). Section 2254(d) states that an application for a writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see White v. Wheeler*, 136 S. Ct. 456, 460 (2015); *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014); *Davis v. Ayala*, 135 S. Ct. at 2198.

The only definitive source of clearly established federal law for purposes of § 2254(d)(1) is the holdings—not dicta—of Supreme Court decisions. *White v. Woodall*, 134 S. Ct. at 1702; *see Woods v. Donald*, 135 S. Ct. at 1377 ("Because none of our cases confront 'the specific question presented by this case,' the state court's decision could not be 'contrary to' any holding from this Court."). "[W]here the precise contours of a right

remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *Id.* (quotations and internal citations omitted).

An unreasonable application of the Supreme Court's holding must be "'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 134 S. Ct. at 1702 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003)). Rather, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Woodall*, 134 S. Ct. at 1702 (quoting *Harrington v. Richter*, 562 U.S. at 103). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,'" and "[i]t therefore cannot form the basis for habeas relief under AEDPA." *Hill v. Curtin*, 792 F.3d 670, 677 (6th Cir. 2015) (quoting *Parker v. Matthews*, 132 S. Ct. at 2155); *see Glebe v. Frost*, 135 S. Ct. 429, 431 (2014) (*per curiam*) ("As we have repeatedly emphasized, [] circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'").

"[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). Section 2254 (d)(2) requires that this Court accord the state trial court substantial deference. If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not

suffice to supersede the trial court's determination. *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015); *Burt v. Titlow*, 134 S. Ct. at 15.

## Findings of Fact

### A.     District Court Proceedings

On July 7, 2010, petitioner received a preliminary examination in the 56A District Court for Eaton County. (ECF No. 18-2, PageID.117-241). He was represented by Attorney Lawrence Emery. Judge Julie Reincke heard testimony from a number of witnesses, including E. P., the victim (*Id.* at 9-95, PageID.125-211), a representative of the Michigan High School Athletic Association (*Id.* at 5-8, PageID.121-24), school officials (*Id.* at 95-109, PageID. 211-25), and a detective (*Id.* at 110-15, PageID.226-31). Judge Reincke bound petitioner over for trial on all charges: three counts of CSC I and three counts of CSC III. (*Id.* at 122-23, PageID.238-39).

### B.     Circuit Court Proceedings

#### 1.     Pretrial Proceedings

On August 20, 2010, Judge Calvin Osterhaven of the Eaton County Circuit Court conducted a status conference. Petitioner was represented by Attorney Emery. (ECF No. 18-3, PageID.242-51). Petitioner's trial was scheduled to begin on November 8, 2010. (*Id.* at 7, PageID. 248).

On October 28, 2010, the court conducted a hearing on a number of pretrial motions, including petitioner's motion for an adjournment of the November 8, 2010, trial date. (ECF No. 18-4, PageID.252-63). Petitioner was represented by Attorneys Frank Reynolds and Richard Hillman. Attorney Reynolds stated that when he agreed to represent petitioner, he did so with the knowledge that the matter was set for trial in November 2010. (*Id.* at 5, PageID.256). He indicated that he needed additional time to track down witnesses who had graduated and moved on or were attending colleges in different places. The assistant prosecutor objected to the requested adjournment, noting that when Attorney Emery had requested and received a November trial date, he received the benefit of more time. Judge Osterhaven granted petitioner's motion and petitioner's trial was scheduled to begin on December 6, 2010. (*Id.* at 8, PageID.259).

On November 18, 2010, Judge Osterhaven conducted a hearing on petitioner's motion to adjourn the December 6, 2010, trial date. (ECF No. 18-5, PageID.264-73). Judge Osterhaven again adjourned the trial date over the assistant prosecutor's objection. Petitioner's trial date was moved to January 10, 2011. (*Id.* at 9, PageID.270).

On January 3, 2011, Judge Osterhaven conducted a pretrial conference. (Pretrial Conference (PT), ECF No. 18-6, PageID.275-84). The judge noted that months had passed since the prosecutor had filed a notice under Mich. Comp. Laws § 768.27a of intent to introduce evidence of petitioner's propensity towards acts of criminal sexual

conduct and possible grooming.[1]  Petitioner's attorney filed an objection to the notice and argued that the statute was unconstitutional.[2]  Judge Osterhaven observed that in *People v. Pattison*, 741 N.W.2d 558 (Mich. Ct. App. 2007), the Court of Appeals had rejected essentially the same argument made by petitioner and it upheld the constitutionality of the statute.  (PT at 5, PageID.279).  Judge Osterhaven ruled that the evidence would be admissible:  "It's my understanding what she intends on doing through the victim is present the story from beginning to end which is going to include sexual acts and activity that occurred outside of Eaton County.  Grooming, its my understanding based on what little I know about this case, that a lot of that occurred in Ingham County.  But it is all part and parcel I believe.  I think it's admissible testimony under the statute.  It's part and parcel to this case.  And I believe it's relevant." (*Id.* at 7, PageID.281).

2.   Trial

Petitioner's trial began on January 10, 2011, and it concluded on January 13, 2010, with the jury's verdict finding petitioner guilty on all six charges.  (Trial Transcripts, TT I-TT IV, ECF No. 18-8, 18-9, 18-10, 18-11).  The initial day of trial was devoted to jury selection and preliminary jury instructions.  (ECF No. 18-8, PageID.291-739).  On the second day, E.P. and her father testified.  (TT II, 23-276, ECF No. 18-9, PageID.762-1016).  E.P. testified that petitioner had been the teacher in her high school

---

[1]*See* ECF No. 18-13, PageID.1492.

[2]*See* ECF No. 18-13, PageID.1495-97.

world history class.  She had been a freshman.  Petitioner had offered to meet with E.P. and review her tests to help boost her academic progress.  (*Id.* at 27-29, 263, PageID. 766-68, 1003).  After the first few sessions, the meetings became personal and did not focus on history.  (*Id.* at 29-30, PageID.768-69).  Petitioner began making physical contact with E.P. in the fall of 2002.  (*Id.* at 32-36, PageID.771-75).        January 20, 2003, was Martin Luther King Day.  The high school was closed for the holiday. Petitioner picked up 14-year-old E.P. at her parent's house and took her to his house. E.P. testified regarding sexual conduct that occurred that day at petitioner's residence. The summary provided by the Michigan Court of Appeals is accurate, thus the details of the sexual conduct need not be repeated here. (Op. at 1, ECF No. 18-17, PageID.1672; TT II, 40-48, PageID.779-87).  E.P. testified regarding another sexual encounter with petitioner at his residence on June 11, 2004, when she was 16 years old.  Again, the appellate summary of the evidence regarding this incident is accurate. (Op. at 1, ECF No. 18-17, PageID.1672; TT II, 51-58, PageID.790-98).  E.P. testified that she went to petitioner's house for the last time on September 17, 2004, after a high school football game.  She was 16 years old.  E.P. testified regarding the sexual conduct on that date supporting petitioner's his criminal convictions. (Op. at 1, ECF No. 18-17, PageID.1672; TT II, 60-65, PageID.799-804).

E. P. testified regarding the circumstances surrounding a co-worker bringing her into contact with Attorney Randie Black, and the attorney's advice regarding civil remedies against petitioner.  E.P. indicated that she had been advised to record

telephone conversations with petitioner and the jury heard those recordings.  E.P. testified that the civil matter was eventually settled and described the amounts that she and her attorney would receive under the settlement.  (*Id.* at 71-132, 160-61, 237-38, PageID.810-71, 900-01, 977-78).

On the morning of January 12, 2011, Judge Osterhaven took up a matter regarding a potential problem with one of the jurors that he had discussed with counsel.  (TT III, 5, ECF No. 18-10, PageID. 1028).  Juror Dixon had been observed downstairs in the courthouse near the security station, and she had been conversing with members of petitioner's family.  In addition, during the second day of trial, Judge Osterhaven had personally observed Ms. Dixon looking out into the audience and "mouthing" something in an effort to communicate with someone in the audience.  Further, while E.P.'s father was on the witness stand, Juror Dixon had blurted out "Oh God" in response to a question or an answer.  (*Id.* at 6-7, PageID.1029-30).  Juror Dixon indicated that her "Oh, my God," exclamation had been in response to observing her former boss sit down in the courtroom with petitioner's wife, mother, and uncle.  (*Id.* at 9, PageID.1032). Ms. Dixon conceded that she had been involved in a conversation with members of petitioner's family the previous evening.  (*Id.* at 7, PageID.1030).

Juror Dixon spoke to her former boss, Sam Frangie.  Among other things, Dixon "asked him, [] 'Tell me I do not know the guy that's on the stand[?]'"  Mr. Frangie purportedly responded, "No, you don't know him."  (*Id.* at 9, PageID.1032). When Judge Osterhaven sought clarification of what "guy on the stand" the juror was referring to,

her response was, "[t]he defendant." [3] (*Id.* at 9, PageID.1032).  Juror Dixon indicated

that petitioner was "some relative of" Mr. Frangie.  (*Id.* at 10, PageID.1033).  Ms. Dixon

learned that Mr. Frangie was present in the courtroom on petitioner's behalf.  (*Id.* at 12-

13, PageID.1035-36).  Ms. Dixon stated that she had liked Mr. Frangie as a boss and

that she had trusted his opinions.  (*Id.* at 17, PageID.1040).

Judge Osterhaven then inquired regarding Ms. Dixon's attempt to communicate

with someone in the courtroom.  Juror Dixon stated that she did not recall the incident.

(*Id.* at 12, PageID.1035).

Judge Osterhaven removed Juror Dixon for cause over petitioner's objection.  (*Id.*

at 20, PageID.1043).  The judge explained his ruling:

> My concern is what impact or what the impression of the other people
> alongside her might have been left with.  They heard her comment and
> her reaction.
>
> . . .  I'm 99.9 percent sure that she was mouthing something to somebody
> out there in the audience yesterday.  I'm not mistaken.  I saw it.  And it
> concerned me enough where I brought up – I thought possibly it was the
> person who turned out to be, I found out this morning, the detective's wife
> back there.  But it wasn't that far back there I didn't think.  It looked like
> she was looking in the middle of the back of the courtroom there.
>
> And it concerned me enough where I pulled out my chart and I pulled out
> her questionnaire to seek exactly who it was.

(*Id.* at 20-22, PageID.1043-45).

---

[3]Dixon clearly meant petitioner, not a person on the witness stand.  Petitioner
exercised his constitutional right and did not testify.  (ECF No. 18-7, PageID.285-90).

Detective Andrew Tobias of the Meridian Township Police Department testified regarding the course of the police investigation, the evidence seized, and the events leading up to petitioner's arrest.  (TT III, 97-185, PageID.1120-1208).

Petitioner called Attorney Black as a witness.  She testified regarding her representation of E.P., including the proposed civil lawsuit and related settlement. (TT III, 227-98, PageID.1250-1321).

On January 13, 2011, the jury returned its verdict finding petitioner guilty on all charges.  (TT IV at 139-42, PageID.1470-73).

Petitioner filed a motion for a new trial under Rule 6.431 of the Michigan Court Rules.  (ECF No. 18-12, PageID.1479-80).  Petitioner argued that testimony under regarding other acts under Mich. Comp. Laws § 768.27a had erroneously been allowed into evidence in violation of Rule 403 of the Michigan Rules of Evidence, the court's decision to excuse Juror Dixon violated petitioner's constitutional rights, and that newly discovered evidence indicated that petitioner could not have committed CSC III on June 11, 2004, and September 17, 2004.  (Brief in Support of Motion for a New Trial, ECF No. 18-13, PageID. 1485-90).

Judge Osterhaven rejected petitioner's arguments and denied the motion for a new trial.  Petitioner had been aware of the specific dates regarding the CSC I and CSC III charges since at least September 2010.  Further, petitioner had been granted two adjournments over the prosecutor's objections.  Petitioner's trial did not begin until January 10, 2011.  Judge Osterhaven found that all of the newly proffered evidence

could have been discovered before trial with reasonable diligence. (ECF No. 18-15, at page 10, PageID.1604). He rejected petitioner's "other acts" argument because it lacked merit. (*Id.* at 11-12, PageID.1605-06). Judge Osterhaven summarized the reasons why he had removed Juror Dixon and he added that Ms. Dixon's post-removal conduct further reinforced his determination that the removal of this juror had been the correct course of action. (*Id.* at 15-16, PageID.1609-10). He found that Juror Dixon had "[c]ertainly" been biased for or against a party, had shown a state of mind that would prevent her from rendering a just verdict or form a positive opinion on the facts of the case or on what the outcome should be, and had opinions or conscientious scruples that would have improperly influenced the juror. (*Id.* at 16, PageID.1611).

Judge Osterhaven denied petitioner's motion for a new trial. (ECF No. 18-16). He imposed the sentences previously indicated. (ECF No. 18-15, PageID.1664-66).

### C.   Appellate Proceedings

Petitioner pursued an appeal as of right. He was represented by Attorney Peter Jon Van Hoeck. Petitioner asked the Michigan Court of Appeals to overturn his convictions on grounds corresponding to Grounds I, III, and IV of his habeas corpus petition. (Statement of Questions Presented, Defendant-Appellant's Brief at iv, found in Michigan Court of Appeals Record, (ECF No. 18-17, PageID.1686). On July 26, 2012, the Michigan Court of Appeals rejected petitioner's arguments and affirmed his convictions. (Op., ECF No. 18-17, PageID.1672-78).

The Court of Appeals held that petitioner was not entitled to a new trial on the basis of newly discovered evidence.  (Op. at 3-4, PageID.1674-75).  "The evidence include[d] a letter from defendant's uncle stating that [] he was with defendant all night on September 17, 2004, a ticket stub to a University of Michigan football game the following day, and a graduation announcement dated June 11, 2004 and family photograph purportedly taken on June 11, 2004 in California." (*Id.* at 3, PageID.1674).  The Court of Appeals found that the trial court judge had not abused his discretion in denying petitioner's motion for a new trial on the basis of this evidence.  It found that petitioner had not shown that he could not, using reasonable diligence, have discovered and produced the evidence at trial.  (Op. at 3-4, PageID.1674-75).  Further, the Michigan Court of Appeals found that petitioner failed to show that the new evidence would make a different result probable on retrial.  (Op. at 4, PageID.1675).

The Michigan Court of Appeals rejected petitioner's arguments that the trial court judge should have excluded evidence of petitioner's alleged conduct in Ingham County under Rule 403 of the Michigan Rules of Evidence and/or Mich. Comp. Laws § 768.27a.  (Op. at 4-5, PageID.1675-76).  The Court of Appeals found no error in the admission of this evidence.  (Op. at 5, PageID.1676).

The Michigan Court of Appeals found no merit in petitioner's argument that he was entitled to a new trial based on the trial court judge's evidentiary ruling regarding a letter the victim had written to her civil attorney.  (Op. at 6-7, PageID.1677-78).  Petitioner's attorney sought to use extrinsic evidence to impeach the witness's

credibility.  Under Rule 613(b) of the Michigan Rules of Evidence, "a trial court may exclude extrinsic evidence used to impeach a witness's credibility if it relates to a collateral matter." (Op. at 6, PageID.1677). "The trial court did not abuse its discretion in excluding the evidence, because what the letter purported to state was not inconsistent with the victim's testimony." (*Id.*). "E.P. simply testified that her civil attorney suggested that she pursue the matter 'out of court.' It says nothing about what E.P. wanted to do at the time, let alone that her attorney's advice was contrary to her own intentions.  Indeed, when asked by defense counsel if she had 'wanted to go to the police from the beginning?', she responded, 'I did not. No.' Accordingly, the letter was not inconsistent with her prior testimony, and consequently, the trial court did not abuse its discretion in excluding the letter from evidence." (Op. at 7, PageID.1678).

Petitioner's application for leave to appeal to the Michigan Supreme Court raised the same issues rejected by the Court of Appeals. (Defendant-Appellant's Application for Leave to Appeal, ECF No. 18-18, PageID.1848-55).  On December 26, 2016, the Michigan Supreme denied leave to appeal.  (12/26/12 Order, ECF No. 18-18, PageID.1847).

On March 20, 2014, petitioner filed his habeas corpus petition. (ECF No. 1).  On May 12, 2014, he filed his amended petition.  (ECF No. 7).

## <u>Discussion</u>

### I.    Motion for a New Trial

In Ground I, petitioner argues that "newly discovered evidence" indicated that he could not have committed CSC III on June 11, 2004, and September 17, 2004, and the trial court judge committed error when he denied petitioner's motion for a new trial. (Amended Petition at 4-5, ECF No. 7, PageID.31-33).   Petitioner argues that the evidence he offered in support of his motion for a new trial[4] could not have been discovered in the exercise of reasonable diligence before trial, and that the trial court erred in not granting him an evidentiary hearing and denying his motion for a new trial. (Petitioner's Brief at 6-11, ECF No. 19, PageID.1978-83).

Both the trial court and the Michigan Court of Appeals held that all the evidence that petitioner offered after his conviction in support of his motion for a new trial could have been discovered before trial in the exercise of reasonable diligence. (*See* ECF No. 18-15 at 10, PageID.1604; Op. at 4, PageID.1675).   Under 28 U.S.C. § 2254(e)(1), the determination of a factual issue by Michigan's courts is presumed to be correct.   It was petitioner's burden to rebut the presumption of correctness by "clear and convincing evidence." (*Id.*).   He has presented nothing approaching his burden.

Moreover, the Michigan Court of Appeals found that nothing in the family photograph proved that petitioner was in California, or that the photograph was taken on June 11, 2004.   Nothing in the graduation announcement tended to prove that

---

[4]This Court's review on this issue does not extend beyond the record evidence in state court that petitioner presented in support of his motion for a new trial. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); 28 U.S.C. § 2254(d); *Eggers v. Warden*, 826 F.3d 873, 878 (6th Cir. 2016).

petitioner was actually at the graduation. The ticket stub did not prove that petitioner attended the game or that he was not capable of committing the offenses on September 17, 2004. The Court of Appeals found that if the proffered evidence had been presented, it would not likely change the outcome, particularly in light of the evidence introduced at trial, including E.P.'s extensive and detailed testimony.   (Op. at 4, PageID.1675). The Court of Appeals held that the trial court did not abuse its discretion in denying petitioner's motion for a new trial.[5]   (*Id.*).

To the extent that petitioner is arguing that the trial court erred in denying his request for an evidentiary hearing and motion for a new trial, it is not a basis for federal habeas corpus relief.   Federal habeas corpus review does not lie for errors of state law. 28 U.S.C. § 2254(a); *see Estelle v. McGuire*, 502 U.S. 62, 67 (1991).

The Court finds that petitioner has not shown that the decision of the Michigan Court of Appeals rejecting the arguments found in Ground I was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "an unreasonable determination of the

---

[5]Petitioner's argument that there was some evidence that may have supported an alibi defense is not a claim of actual innocence.   Further, if he had included a claim of actual innocence in his petition, it would not serve as a freestanding basis for habeas corpus relief.   "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013); *accord Gladney v. Pollard*, 799 F.3d 889, 895 (7th Cir. 2014); *Koan v. Hoffner*, No. 1:14-cv-204, 2015 WL 4425961, at *10 (W.D. Mich. July 20, 2015).

facts in light of the evidence presented in the State court proceeding."   28 U.S.C. §
2254(d).

## II.   Denial of a Motion Requesting a Third Adjournment of the Trial Date

Ground II is petitioner's claim that he was denied his right to a fair trial because
Judge Osterhaven denied his motion for additional time to prepare a defense.[6]
(Amended Petition at 5, ECF No. 7, PageID.32).   Ground II is unexhausted because
petitioner did not raise this issue in the Michigan Court of Appeals.   (*See* Defendant-
Appellant's Brief at iv, Statement of Questions Presented, ECF 18-17, PageID.1686).
"An application for a writ of habeas corpus may be denied on the merits,
notwithstanding the failure of the applicant to exhaust the remedies available in the
courts of the State."   28 U.S.C. § 2254(b)(2).   There is no developed argument in
petitioner's brief (ECF No. 19, PageID.1973-90) corresponding to Ground II.[7]   More
significantly, the record is devoid of any request by petitioner for a third adjournment
of his trial.   (*See* docket sheet at 5, ECF No. 18-1, PageID.113).

It is patent that the trial court judge did not violate petitioner's constitutional
rights by somehow denying a motion to adjourn the January 10, 2011, trial date when

---

[6]To the extent that petitioner is seeking relief based on the state standard for an
adjournment, his claim is not cognizable on federal habeas review.   *See Estelle v.
McGuire*, 502 U.S. at 68.   The extraordinary remedy of habeas corpus lies only for a
violation of the Constitution or laws or treaties of the United States.   28 U.S.C. §
2254(a).

[7]The only motions mentioned in petitioner's brief are his motion for a new trial
and his motion to suppress other acts evidence.   (*Id.* at 6, 8, 12, 14, PageID.1978, 1980,
1984, 1986).

the judge was never presented with a motion requesting such relief.  Petitioner's statements regarding the evidence that he believes could have been discovered before trial in the exercise of reasonable diligence must be rejected to the reasons previously stated in the discussion of Ground I.  The Court finds that Ground II does not provide a basis for federal habeas corpus relief.

## III.   Evidence of Other Acts

In Ground III, petitioner argues that he was denied his right to a fair trial because the trial court should not have admitted evidence of his other acts with E.P. in another county.[8]  (Amended Petition at 6, ECF No. 7, PageID.33; Petitioner's Brief at 12, ECF No. 19, PageID.1984).

The Michigan Court of Appeals found no error in the admission of the challenged evidence.  The evidence was "clearly relevant under MCL 768.27a because it went directly toward showing defendant's propensity to commit the charged acts[.]" (Op. at 5, ECF No. 18-17, PageID.1676).  The evidence's probative value was not substantially outweighed by its risk of unfair prejudice to defendant.  (*Id.*).

The extraordinary remedy of habeas corpus lies only for a person held in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  As the Supreme Court explained in *Estelle v. McGuire*, an inquiry whether

---

[8]Although petitioner describes this issue as "allowing evidence of pending charges," it is clear that pending charges were never offered or accepted as evidence of petitioner's guilt.  The challenged evidence was the victim's testimony regarding petitioner's physical contact with her that occurred outside Eaton County.

evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." 502 U.S. at 67-68 (citations and quotations omitted). Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68; *accord Swarthout v. Cooke*, 562 U.S. 216, 219-21 (2011).

Petitioner has not shown that the admission of this evidence resulted in a federal due process violation. "A due process claim premised on a mistaken state court evidentiary ruling faces a steep climb. The kind of foundational unfairness and arbitrariness needed to show that a flawed evidentiary ruling rises to the level of a due process violation is not a broad category[.]" *Burger v. Woods*, 515 F. App'x. 507, 510 (6th Cir. 2013). Garden variety claims that the trial court misapplied the Michigan Rules of Evidence do not "cross the constitutional threshold of due process." *Id.* at 510 (citations and quotation omitted). State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000); *accord Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552. The state court decision rejecting this claim is entitled to a second layer of deference under AEDPA. *See e.g.*, *Branion v.*

*Rapelje*, 1:11-cv-1277, 2016 WL 5423462, at \*6-7 (W.D. Mich. Sept. 29, 2016); *Williams v. Kelly*, No. 1:15-cv-184, 2016 WL 6311234, at \*9 (N.D. Ohio Mar. 31, 2016).

The Court finds that the decision of the Michigan Court of Appeals rejecting this claim withstands scrutiny under deferential AEDPA standards.  28 U.S.C. § 2254(d).

## IV.    Dismissal of a Juror

In Ground IV, petitioner argues that he was denied a fair trial by the dismissal of Juror Dixon.  (Amended Petition at 6, ECF No. 7, PageID.33; Petitioner's Brief at 13-16, PageID.1985-88).

The Sixth and Fourteenth Amendments to the Constitution guarantee a criminal defendant the right to an impartial jury, not a jury that is biased in his favor.  *See Morgan v. Illinois*, 504 U.S. 719, 727 (1992).  The Michigan Court of Appeals properly explained why it rejected petitioner's argument that dismissal of Juror Dixon violated his constitutional rights.  (*See* Op. at 2-3, PageID.1673-74).

Petitioner has not show that the decision of the Michigan Court of Appeals rejecting Ground IV was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. § 2254(d).

III.    **Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.   A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*   Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDonnell*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467.  Consequently, the Court has examined each of petitioner's claims under the *Slack* standard.

Petitioner cannot demonstrate that reasonable jurists would find that the denial of habeas corpus relief on each of the grounds raised in his petition is debatable or wrong.  *See Slack*, 529 U.S. at 484.  Accordingly, the Court will enter an order denying petitioner a certificate of appealability.

## <u>Conclusion</u>

For the foregoing reasons, the habeas corpus petition will be denied.


Dated: February 16, 2017                            /s/ Paul L. Maloney
                                                Paul L. Maloney
                                                United States District Judge


-23-